UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 06-CR-702 (JFB)

———————

UNITED STATES OF AMERICA,

versus

MICHAEL KELLY REINER,

Defendant.

———————

MEMORANDUM AND ORDER
November 9, 2006

———————

JOSEPH F. BIANCO, District Judge:

On October 20, 2006, defendant Michael Kelly Reiner was indicted on ten counts of possession of child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2). On November 3, 2006, Magistrate Judge A. Kathleen Tomlinson ordered the release of the defendant on bail, subject to certain conditions. The government seeks, pursuant to 18 U.S.C. § 3145(a), to revoke the order of release or, in the alternative, to modify the conditions set by Judge Tomlinson. Defendant also seeks, under 18 U.S.C. § 3145(a), to amend the conditions of his release.

For the reasons that follow, this Court finds that no condition or combination of conditions will reasonably assure the safety of the community. Accordingly, the November 3, 2006 Order of release is vacated and defendant is ordered to be detained pending trial.

I. BACKGROUND

According to the criminal complaint, on September 12, 2006, defendant provided written consent for federal agents to search his residence. During that search, the government alleges that law enforcement officers discovered and seized several computers and external hard drives containing more than 500 still images and 60 videos of young children engaged in sexually explicit conduct. Subsequently, defendant was arrested and charged with possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). At the time of his arrest, defendant had been employed for eighteen years as an elementary and middle school teacher at the Long Island School for the Gifted (hereinafter "LISG"), in Huntington Station, New York.

Following the defendant's arrest, a detention hearing was conducted, pursuant to 18 U.S.C. § 3142(f)(1)(E), before Magistrate Judge Tomlinson. The hearing consisted of four separate proceedings, extending over several weeks, and included arguments of counsel[1] and the testimony of several witnesses, including several parents of current and former students from LISG, defendant's brother-in-law, a prospective employer of defendant during the pretrial period, and a friend of defendant who offered to house defendant during the pretrial period.

On November 3, 2006, Magistrate Judge Tomlinson issued an order releasing defendant on bail, subject to certain conditions. Specifically, Judge Tomlinson found, under the standard for pretrial detention set out in 18 U.S.C. § 3142(g), that certain conditions would reasonably assure (1) the appearance of defendant at trial and (2) the safety of the community. Those conditions included, *inter alia*, setting bail in the amount of $375,000, that defendant avoid places where children congregate, and that he not have access to any device with internet capability.

Both parties ask this Court to modify Judge Tomlinson's order. The government asserts that it has demonstrated (1) by a preponderance of the evidence that defendant presents a serious risk of flight and (2) by clear and convincing evidence that, if released, Reiner would pose a serious danger to the community. Accordingly, the government seeks to revoke the release order and detain defendant pending trial or, in the alternative, to impose more restrictive conditions of release. Defendant seeks to lower the bail amount.

## II. LEGAL STANDARD

The Bail Reform Act ("the Act") directs that, if a court determines that release on an appearance bond is not sufficient, the court shall order pretrial release "subject to the least restrictive . . . condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3141. However, the court "shall order the detention of [the defendant] before trial" if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *see United States v. El-Hage*, 213 F.3d 74, 76 (2d Cir. 2000); *United States v. Gotti*, 358 F.Supp. 280, 282, (S.D.N.Y. 2005).

This Court reviews the release order of a magistrate judge *de novo*. *See, e.g., United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *Borodin v. Ashcroft*, 136 F.Supp.2d 125, 128 (E.D.N.Y. 2001). Moreover, this Court must consider the following factors in determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including-

---

[1] Defendant was represented by a federal public defender for the first day of the detention hearing and, for the remainder of the proceeding, by private counsel.

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Act provides that certain crimes give rise to a rebuttable presumption that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e). There is no such presumption for the crimes charged in the instant indictment. However, the charges in the indictment do constitute "crime[s] of violence" under the Act. 18 U.S.C. § 3156(a)(4)(C) (defining "crime of violence" for purposes of Section 3142).

### III. DISCUSSION

Upon review of a release order, the Court must determine whether the government has demonstrated by "clear and convincing evidence" that no condition or combination of conditions will reasonably assure the safety of any other person and the community, *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001), and whether the government has established "by a preponderance of the evidence . . . that the defendant . . . presents a risk of flight." *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). Throughout this inquiry, the Court is mindful that "it is only a limited group of offenders who should be denied bail pending trial." *See Gotti*, 358 F.Supp.2d at 283 (quoting *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987)) (internal quotation marks omitted).[2]

### A. Danger to the Community

Based upon the nature of the charges in the indictment regarding the possession of child pornography and all of the evidence that has been proffered by the Government– including the evidence of his possession of hundreds of images and dozens of videos of children engaged in sexually explicit conduct, including images of sadistic abuse of children, the evidence of his possession of 2,000 stories from a website (and active participation with the creator in the content of that site) devoted to killing, sexually abusing, and eating children, and evidence of email

---

[2] In reaching its decision, this Court has carefully reviewed the evidentiary record in this case, including the transcripts of the proceedings before Judge Tomlinson, the government's letter seeking revocation or modification and the defendant's letter in response, the letters from friends and colleagues of the defendant, and certain exhibits, such as website printouts and emails that were part of the criminal complaint or submitted by the government to Magistrate Judge Tomlinson. After Judge Tomlinson issued the November 3, 2006 Order, the parties were given an opportunity to offer additional evidence before this Court. Each party chose not to introduce additional evidence and, instead, to present arguments to this Court on the evidence before Judge Tomlinson.

3

communications with others sharing these fantasies (including the use of a LISG student's yearbook photograph) – the Court finds that the Government has presented by clear and convincing evidence that the defendant is a danger to children and the community generally. The Court emphasizes that, based upon the charges and related evidence proffered by the government, the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals. Based on the evidence presented, the additional danger to the community posed by the defendant's ability to conduct such telephone or online conduct with others cannot be ignored by this Court.

This determination is based on an examination of the factors set out in the Bail Reform Act, which is set forth below.

1. The Nature and Circumstance of the Offense Charged

The Indictment contains extremely serious charges that bear directly on the issue of danger. Specifically, the Indictment charges ten counts of possession of child pornography arising from the possession of more than 500 still images and 60 videos of young children engaged in sexually explicit conduct, including images of sadistic abuse of children.

As previously noted, although this is not a case with a statutory presumption of detention, the charges in the Indictment do constitute crimes of violence under the Bail Reform Act. 18 U.S.C. § 3156(a)(4)(C).

The reason for classifying these charges as crimes of violence is clear. As the Third Circuit has pointed out, in connection with the Congressional findings on Section 2251, which the court viewed as closely related to Section 2252A, "Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'" *United States v. MacEwan*, 445 F.3d 237, 250 (3rd Cir. 2006) (citing the Child Pornography Prevention Act of 1996, Pub. L. No. 104-208 § 121, 110 Stat. at 3009, 3009-27 (1996)).

2. Weight of the Evidence

The Court views the weight of the evidence against defendant as very strong. The government has proffered evidence that the images and other materials that form the basis of the charges against the defendant were obtained from computers and other devices found in the defendant's home and under his exclusive control. Moreover, the government has proffered evidence that the defendant had made statements to law enforcement officers linking himself to the computer.

### 3. Nature and Seriousness of the Danger to Any Person or to the Community that would be Posed by Defendant's Release

In addition to the child pornography that is the subject of the instant Indictment, the Court has also taken into consideration the other evidence uncovered during the investigation that is clearly relevant to the Court's consideration of the issue of dangerousness and, specifically, to the issue of the defendant's state of mind.

Although the possession of child pornography is itself a crime of violence and presents obvious concerns regarding danger to children and the community in general, not every such case will warrant detention and, as noted *supra*, there is no presumption of detention for the particular charges in the Indictment. However, in this particular case, there is substantial additional evidence beyond the specific images charged in the Indictment which, when considered in conjunction with the charged conduct, bears heavily on the issue of dangerousness. Examples of this type of evidence include:

> First, as noted *supra*, in addition to the ten counts in the Indictment, there is evidence that the defendant possessed more than 500 still images and 60 videos of young children engaged in sexually explicit conduct, including images of sadistic abuse of children.

> Second, there is evidence that approximately 2,000 stories devoted to killing, sexually abusing, and eating children were found on computer equipment belonging to the defendant.

> Third, there is evidence that defendant admitted to law enforcement personnel that he had a fetish for young boys, slavery, and cannibalism (although claiming it was fictional), and assisted an individual in Canada with the operation of a website devoted to young boys, slavery, and cannibalism. Printouts from that website were attached to the complaint.

> Fourth, there is evidence of email communications sent by the defendant to an individual in California who shared defendant's alleged fantasy regarding eating young boys.

> Fifth, there is evidence that attached to one of those email messages, in which Reiner purported to be a fourteen-year-old child who wanted to be eaten, was a yearbook-type photo of a child who was a student of Reiner's at LISG. That communication was sent from an email account associated with the school library.

> Sixth, there is evidence that the defendant possessed images of a boy with flesh being carved out of his back by an adult male.

> Seventh, there is evidence that the defendant possessed lists of names and dates of birth of children, obtained from the website described above, relating to a cannibalism "summer camp" where children were to be eaten.

> Finally, there is evidence that the defendant had computer wiping tools on his computer, as well as unlicensed

5

copies of forensic software tools, which are commonly used by computer forensic examiners.

In reaching this decision, the Court has carefully considered, as it must, whether there are any conditions of release that could ensure the safety of the community given these concerns. The Magistrate Judge, in recognition of the various dangers to the community described above, devoted several proceedings to develop some combination of conditions that would alleviate these concerns, including restrictions requiring that the defendant stay away from where children congregate, and that he not have access at home or at work to a computer or any device with internet capability.

However, this Court finds that these conditions are difficult, if not impossible, to enforce and insufficient to assure the safety of the community under the circumstances of this case. Specifically, if the defendant is not subject to home detention, there would be no way to monitor his activities during the course of the day, including his interaction with children, and his use of phones and the internet. Even if the Court were to order electronic monitoring and home detention of the defendant pending trial, that condition would not adequately address his ability to access phones or computers in his home which could be used for the types of illicit activities described above, even if steps were taken to try to prevent those items from being present or available in the house. In this day and age, with devices such as cellphones, Blackberries, and laptops, there are no conditions which can reasonably assure the safety of the community under the particular circumstances of this case if the defendant is released on bail.

4. History and Characteristics of the Defendant

The Court has carefully considered the history and characteristics of the defendant, and finds several factors that weigh in his favor, including the absence of a criminal history, his long tenure at LISG, and the lack of any evidence that defendant physically abused children during his employment at LISG. These factors were reflected in the testimony and letters from several parents of LISG students, and from defendant's friends and colleague, who maintain that defendant poses no danger to the community. However, the government has put forth substantial evidence that there is a side of defendant's life that these individuals were apparently not aware of.

Although this Court has carefully weighed the factors in defendant's favor, they are insufficient to undermine the finding of danger by clear and convincing evidence – a finding supported by the nature of the charges in this case and the other evidence of danger presented by the government.

B. Defendant's Arguments

This Court finds that the two principal arguments made by defendant in support of his release fail to demonstrate that any condition or combination of conditions would reasonably assure the safety of the community.

First, defendant argues that the Court should not consider the website evidence and other evidence involving the defendant's alleged fetish for young boys, slavery, and cannibalism because it is not, itself, criminal and is protected by the First Amendment of the United States Constitution. The Court rejects that argument. Even if that evidence is

not charged as a crime or constitutes protected speech under the First Amendment, it still may be considered by the Court on the issue of dangerousness as it relates to the crime charged – specifically, whether the defendant knowingly possessed the child pornography charged in the Indictment, the potential purpose or use of that pornography, and defendant's overall state of mind. *See United States v. Rahman*, 189 F.3d 88, 117-18 (2d Cir. 1999) (holding that even if speeches were protected by First Amendment, they could be considered to prove a pertinent fact in a criminal prosecution such as motive); *see also Wisconsin v. Mitchell*, 508 U.S. 476, 498 (1993) ("The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.") .

Second, defense counsel argues that the evidence regarding the website and the other evidence of communications regarding cannibalism and other forms of violence and abuse of children are simply fantasies, and that there is no evidence that the defendant has, in fact, committed any such acts. It is true there is no evidence of physical abuse of children by the defendant. However, the overwhelming evidence presented by the government of the defendant's obsession with images and stories about horrific abuse and violence of all kinds against children, combined with the charged possession of child pornography and other evidence I have outlined, creates a real danger to the community that defendant could act on that obsession. In addition, the dangerousness concerns not only relate to potential abuse and illicit activity by the defendant himself, but also to the facilitation of others, through on-line communications, who may be trafficking in child pornography or engaged in sexual or other physical abuse of children. For example, as noted *supra*, there is evidence that the defendant had email communications with another individual in which the defendant purported to be a fourteen-year-old child who wanted to be eaten. The defendant allegedly attached a photograph of a real student attending LISG to the email. There is no way of knowing what use the recipient of that email made of the attached photograph or what dangers the student in that photograph could be exposed to as a result of this alleged conduct by the defendant. This is just one example of how, even assuming that the defendant has not and will not act out on his fantasies, the defendant's conduct in connection with the charged crimes, and his communications with others, may be putting children in danger.

Accordingly, this Court finds that the government has sustained its burden of demonstrating by clear and convincing evidence that the defendant is a danger to the community and that there are no conditions or combination of conditions that can reasonably assure the safety of the community. The Court, therefore, vacates the Magistrate Judge's November 3, 2006 Order and orders that the defendant be detained pending trial.

C. Risk of Flight

Although the government also asserts that the defendant presents a risk of flight, the Court finds that it has failed to meet its burden of proving by a preponderance of the evidence that no conditions could reasonably assure defendant's appearance in court. Defendant has lived at the same residence on Long Island for 36 years, had been employed for 18 years as a school teacher at LISG, and has close family ties to the community. Accordingly, this Court finds that some combination of conditions could reasonably assure

defendant's appearance in court. *See* 18 U.S.C. § 3142(e), and orders the detention of defendant pending trial solely on grounds of dangerousness.

### IV. CONCLUSION

For the foregoing reasons, the government's motion to revoke the order of release is GRANTED. The defendant's motion to amend the conditions of release is DENIED. The November 3, 2006, order of release is VACATED. Defendant is ordered detained pending trial.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 9, 2006
      Central Islip, NY

\* \* \*

The attorney for the government is Allen Lee Bode, Assistant United States Attorney, Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, One Pierrepont Plaza, Brooklyn, New York 11201. The attorney for the defendant is Ronald L. Schoenberg, 200 Willis Avenue, Mineola, New York, 11501.