

**U.S. Department of Justice**

*United States Attorney
Eastern District of New York*

*United States Attorney's Office*

F.#2006R01819        *610 Federal Plaza*
                    *Central Islip, New York 11722-4454*

January 10, 2007

**Hand Delivered & ECF**

The Honorable Joseph F. Bianco
United States District Judge
United States District Court
Eastern District of New York
United States Courthouse
924 Federal Plaza
Central Islip, New York 11722

       Re:  United States v. Michael Kelly Reiner
           06 CR 702 (JFB)(ETB)

Dear Judge Bianco:

      The government submits this letter in opposition to the defendant's oral request to reopen the detention hearing in this matter.  In support of this request, the defendant has submitted a "Forensic Evaluation Report" by Don J. Lewittes, Ph.D., following a December 14, 2006 interview of the defendant.  The evaluation submitted by the defendant purports to conclude that defendant Reiner "does not pose a threat to any child or adult in the community."  Report at 3.  As set forth herein, the proffered defense forensic report provides an insufficient basis to reopen the extensive detention hearing previously conducted.

      A detention hearing may only be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing," and that information "has a *material* bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f) (emphasis added).  Courts have interpreted this provision strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing.  See United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir.1991)(per curiam); United States v. Hare, 873 F.2d 796, 799 (5th Cir.1989).  As one district court has noted, "the statute on its face seems to require something akin to 'newly

discovered evidence which by due diligence could not have been discovered' earlier." United States v. Bradshaw, 2000 WL 1371517, *2 (D.Kan. 2000) (citing Fed.R.Civ.P. 60(b)(2)).

Here, the proffered defense forensic report fails to meet the standard for reopening the bail hearing, as it is not material (as set forth below) and could have been brought before the Court as part of the initial proceedings. Here, the defendant was arrested and made his initial appearance on September 27, 2006 and the Court ordered the defendant's detention on November 9, 2006. The government notes that Dr. Lewittes visited the defendant on December 14, 2006 and issued his report five days later, on December 19, 2006. Thus, the defendant had six weeks in which he could have easily obtained the proffered psychological report and failed to do so. As such, he cannot satisfy the required showing that the proffered information was unavailable at the time of the detention hearing.

In addition to the failure to show unavailability, Reiner cannot satisfy the required showing that the proffered forensic information would be material. Although the Supreme Court held pre-Daubert that psychiatric testimony regarding future dangerousness was admissible in the context of death penalty litigation, the Supreme Court also recognized that the American Psychiatric Association ("APA") takes the position that psychiatrists' predictions about future dangerousness are wrong most of the time. Barefoot v. Estelle, 463 U.S. 880, 901 (1983). In fact, as the Barefoot dissent noted, according to the APA *Amicus* brief ("APA Brief"), "two out of three predictions of long-term future violence made by psychiatrists are wrong." Id. at 920. Indeed, the APA Brief noted that nothing in the training of psychiatrists makes them particularly able to predict whether a particular individual will be dangerous. See APA Brief, Barefoot v. Estelle, 463 U.S. 880 (1983), at 9. Rather, the Barefoot Court's opinion concluded that "even a lay person" could make such predictions. See Barefoot, 463 U.S. at 896-97. In short, the scientific community has long recognized that psychiatric predictions concerning future dangerousness are little more than speculation. See Erica Beecher-Monas & Edgar Garcia-Rill, Danger at the Edge of Chaos: Predicting Violent Behavior in a Post-Daubert World, 24 Cardozo L.Rev. 1845, 1845-46 (2003)).

Here, the proffered forensic report appears to be based solely upon general psychological testing and the self-serving denials of guilt in a December 14, 2006 interview of the defendant Reiner. The Lewittes forensic report fails to even address one of the Court's primary concerns, specifically, that

the danger at issue includes:

> [Reiner's] ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

November 9, 2006 Order of Detention at p. 4.  Rather, the Lewittes report assumes that the question of dangerousness concerns solely the defendant's potential abuse of children. This defense report also ignores the Court's findings as to the weight of the evidence against the defendant and simply accepts defendant Reiner's self-serving denials of guilt to conclude he is not dangerous (i.e., he is not guilty, therefore he is not dangerous).

This cursory forensic examination misses the mark in failing to even consider the evidence of dangerousness established at the bail hearing, such as (1) the number of images involved, including sadistic images, (2) the numerous graphic stories of the sexual killing and eating of children, (3) the defendant's possession of child erotica at the border, (4) the defendant's admission that he had a fetish for young boys, slavery and cannibalism, (5) evidence of an email sent by Reiner containing a yearbook-type photo of a student to another individual sharing Reiner's cannibalism fantasy, (6) Reiner's possession of images of a boy with flesh being carved from his back, (7) lists of names and birthdates of children from the website, (8) Reiner's possession of computer wiping and forensic software tools, and (9) Reiner's possession of news articles concerning missing children.  In failing to even consider this evidence, the Lewittes report does not provide a sufficient basis to reopen the bail hearing.

In the alternative, should the Court wish to conduct further bail proceedings, the government will request that the defendant consent[1] to an examination by a psychiatrist or

---

[1]     Pursuant to the Bail Reform Act, the Court is not authorized to order a psychiatric examination to determine a defendant's dangerousness.  <u>United States v. Martin-Trigona</u>, 767 F.2d 35, 38 (2d Cir. 1985).

3

psychologist retained by the government, demand discovery concerning Lewittes and an opportunity to cross examine him concerning the forensic report.

For the foregoing reasons, the defendant's request to reopen the bail hearing should be denied.

> Respectfully submitted
>
> ROSLYNN R. MAUSKOPF
> United States Attorney
>
> By: _____
> Allen L. Bode
> Assistant U. S. Attorney

cc:  Ronald Schoenburg, Esq.